ANTONIO SMITH,                           )
                                         )
    *Plaintiff*,                         )    No. 1:10-cv-206
                                         )
v.                                       )    *Chief Judge Curtis L. Collier*
                                         )
CITY OF CHATTANOOGA,                     )
CHATTANOOGA POLICE DEPART-               )
MENT,  HAMILTON COUNTY                   )
AMBULANCE SERVICE,[1] OFFICER            )
BOBBY ADAMS, OFFICER GARY                )
WILLIAMS, OFFICER BRIAN ANGEL            )
                                         )
    *Defendants*.

## MEMORANDUM

This action arises out of an incident where officers employed by the Chattanooga Police Department arrested Plaintiff Antonio Smith ("Plaintiff") on July 1, 2009, for felony possession of marijuana, resisting arrest, and assault on a police officer.  Although Plaintiff's complaint is difficult to decipher and it does not clearly set out specific facts or circumstances of the arrest, the Court discerns Plaintiff brings federal and state claims against Defendants City of Chattanooga ("City"), Hamilton County Ambulance Service ("Hamilton County" or "EMS"), Chattanooga Police Officer Gary Williams ("Officer Williams"), Chattanooga Police Officer Bobby Adams ("Officer Adams"), and Chattanooga Police Officer Brian Angel ("Officer Angel").  Plaintiff seeks  an unspecified amount of punitive damages, declaratory and injunctive relief, and "any relief this Honorable Court deems just[,] proper[,] & equitable." (Court File No. 17).

---

[1]    Plaintiff has sued Hamilton County by naming the Hamilton County Ambulance Service, which is more appropriately known as Hamilton County Emergency Medical Services ("Hamilton County EMS" or "EMS").  In this memorandum the Court will refer to it as Hamilton County or EMS.

Plaintiff filed this amended *pro se* civil rights action pursuant to 42 U.S.C. §§ 1981, 1983, and 1985 (2) & (3), claiming he was arrested without probable cause; the police used excessive force to effect the arrest; the City, Defendant Police Officers, and Hamilton County denied him medical treatment; and the City has a policy and custom of "ordering unlawful attacks on citizens in urban areas called minorities" (Court File Nos. 17 & 19).[2]   In addition, Plaintiff seemingly raises a state-law claim of assault.   In essence, Plaintiff claims he was subjected to an illegal arrest without probable cause, excessive force when he was arrested and placed in the patrol car, and denied immediate medical treatment for the injuries he suffered as a result of the alleged excessive force (Court File Nos. 17, 19).

This matter is before the Court on Defendants' motions for summary judgment (Court File Nos. 68, 70, & 80) to which Plaintiff has not responded.   Because it appears some of the defendants may have referred to documents which the Court previously ruled would not be considered in this proceeding (Court File No. 81), the Court reiterates that this case is proceeding only on Plaintiff's amended complaint (Court File No. 17) and brief (Court File No. 19).[3]   Pursuant to the Court's January 31, 2011, Order, the Court will consider only those claims properly raised in the amended

---

[2]        An amended complaint replaces all prior complaints. *B & H Medical, L.L.C. v. ABP Admin., Inc.,* 526 F.3d 257, 268 n. 8 (6th Cir. 2008).   Plaintiff and Defendants were so advised in the Court's previous Order (Court File No. 23).

[3]        Plaintiff originally filed a complaint with over one-hundred pages of exhibits, a sixty-five page supplement; an eleven-page supplement; and a thirty-eight page amended complaint with over two hundred pages of exhibits.   The Court issued an Order specifically instructing Plaintiff to file a proper motion and brief.   Plaintiff submitted an amended complaint on the form supplied by the Court (Court File No. 17) and a thirteen-page brief (Court File No. 19) in compliance with the Court Order.   In violation of the Court Order, Plaintiff also filed other lengthy documents which the Court notified the parties it would not consider.   The Court specifically ordered that "this lawsuit will proceed only on Plaintiff's amended complaint (Court File No. 17) and his supporting brief (Court File No. 19)." (Court File No. 23).

complaint and brief on summary judgment as those are the only claims before the Court (Court File

Nos. 17 & 19). Thus, the only claims before the Court are Plaintiff's § 1983 claims of arrest without

probable cause and excessive force against the City of Chattanooga and the Defendant Chattanooga

Police Officers; the state-law assault claim against the City of Chattanooga and the Defendant

Chattanooga Police Officers; and the § 1983 denial of medical care claim, the § 1981 denial of equal

rights under the law claim, and the § 1985 conspiracy claim against the City of Chattanooga, the

Defendant Chattanooga Police Officers, and Hamilton County. The City of Chattanooga, the

Defendant Chattanooga Police Officers, and Hamilton County have filed separate motions for

summary judgment, each addressing some of the same claims brought by Plaintiff. For the sake of

efficiency, clarity, and conciseness, the Court will address the Defendants motions together to the

extent it will organize the Memorandum by each of the claims that Plaintiff asserts and then address

the motions for summary judgment filed by the City and County.

After reviewing the record, for the reasons explained below, Defendants' motions for

summary judgment will be **GRANTED** (Court File Nos. 68, 70, & 80), and Plaintiff's complaint

will be **DISMISSED** in its entirety (Court File No. 17). In addition, because the complaint will be

dismissed and there will be no trial in this matter, Defendant's motion in limine will be **DENIED**

(Court File No. 66).

## I.      Standard of Review

Summary judgment is appropriate where no genuine issue of material fact exists and the

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party

bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party presents evidence sufficient to

support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party may not rest on his pleadings, but must come forward with some significant probative evidence to support his claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994), *cert. denied*, 516 U.S. 806 (1995); *Kentucky Div., Horsemen's Benev. & Protective Ass'n, Inc. v. Turfway Park Racing Ass'n, Inc.*, 20 F.3d 1406, 1411 (6th Cir. 1994); *see also Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992) (holding courts do not have the responsibility to search the record *sua sponte* for genuine issues of material fact). To refute that no genuine issue of material fact exists, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. at 322. A mere scintilla of evidence is not enough. *Anderson v. Lilberty Lobby, Inc*., 477 U.S. 242, 252 (1986); *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). In other words, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support his claim. *Celotex Corp. v. Catrett*. 477 U.S. at 324. If the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to summary judgment. *Id*. at 323.

In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *National Satellite Sports, Inc. v. Eliadis Inc*., 253 F.3d 900, 907 (6th Cir. 2001). The Court then determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth

4

of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Thus, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248, 249; *National Satellite Sports*, 253 F.3d at 907.

In the instant case, Defendants have filed properly supported motions for summary judgment requiring Plaintiff to set forth specific facts showing that there is a genuine issue for trial. Therefore, Plaintiff is required to come forward with some significant probative evidence to support his claims. *Celotex Corp. v. Catrett*, 477 U.S. at 324. Plaintiff has not filed any response to the summary judgment motions. Furthermore, aside from the fact that his claims are not factually supported, neither his complaint nor brief are signed under oath or penalty of perjury. Consequently, neither Plaintiff's complaint nor brief can serve as an affidavit in opposition to a summary judgment motion. *See Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th Cir. 1991) ("[A]n opposing party cannot establish a genuine issue of material fact by resting on the mere allegations of the pleadings").

## II. Facts

Before setting forth the material facts of the case, the Court notes significant problems with Plaintiff's presentation of material facts to the Court. At summary judgment, Plaintiff's factual pleadings, none of which are under penalty of perjury, consists of: (1) slightly more than one page of his statement of claims in his complaint (Court File No. 17); (2) a thirteen-page supporting brief (Court File No. 19), and (3) a four-page pretrial narrative (Court File No. 57) which includes a half page of allegations with very few supporting facts. Plaintiff has not filed any opposition to Defendants' motions for summary judgment even though the scheduling order provided that his response must be filed in accordance with Local Rule 7.1, EDTN (Court File No. 54). Plaintiff's

5

hand-written complaint and supporting brief are difficult to decipher and provide very few facts to support his allegations. In addition, portions of his supporting brief do not pertain to the claims alleged in his complaint but rather, as the Court discerns, discuss an ex-girlfriend and some of his prior arrest history.

Rule 56(c) of the Federal Rules of Civil Procedure provides if a party fails to properly address a party's assertion of fact in a motion for summary judgment, then the Court may "consider the fact undisputed for purposes of the motion[.]" Fed.R.Civ.P. 56(e)(2). Therefore, the Court will recite the facts, either uncontested or taken in the light most favorable to Plaintiff as the non-moving party, and all reasonable inferences therefrom, to the extent supported by the record. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-51 (2000) ("[T]he court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses." (internal quotation marks and citations omitted)). [4]

On July 1, 2009, Plaintiff, who is nicknamed "Shadow Boxer" because at one time he was allegedly going to sign a three-year, $5 million dollar contract with a top rank boxing promoter, was arrested and charged with felony possession of marijuana, resisting arrest, and assault on a police officer (Court File No. 19; Court File No. 81-1 p. 90-92). At approximately midnight on June 30, 2009, Plaintiff was talking to a group of people. When Officer Williams' approached the group in his police car, he observed Plaintiff drop what the officer believed to be a "marijuana cigarette

---

[4] The motion for summary judgment filed on behalf of the City of Chattanooga and the Chattanooga Police Officer Defendants in their official capacity recites the facts from Plaintiff's deposition (Court File No. 71). Although a portion of Plaintiff's deposition is in the record, Defendants' referenced portions of his testimony that are not a part of the record.

6

known as a 'blunt'" (Court File Nos. 19, 69-3, Affidavit of Officer Williams). Officer Williams exited his vehicle, observed the marijuana cigarette on the ground, and attempted to question Plaintiff who was walking away.[5]

Officer Williams attempted to place Plaintiff in custody but Plaintiff pushed the officer away and turned. Plaintiff backed away from the officer into a mailbox losing his balance, at which time the officer took him to the ground in order to handcuff him (Court File No. 69-3, p. 2). Officer Williams rolled Plaintiff onto his stomach, and the officer was on Plaintiff's back trying to handcuff him when Plaintiff did a push-up holding himself off the ground so that he could not be handcuffed. Officer Williams attempted to sweep Plaintiff's arms from underneath him to get him back on the ground but was unable to do so; thus prompting him to call for back-up. Officer Williams and Plaintiff were on the ground with Officer Williams on his back when Officers Bryan Angel and Bobby Adams arrived. Officer Angel told Plaintiff he would use his Taser if Plaintiff did not stop resisting.[6] At that time, Plaintiff allowed himself to be handcuffed by Officer Williams after some other minor resistance. Officer Angel searched Plaintiff and found a bag in his pants which tests revealed was marijuana (Court File No. 69-3, p. 2; Court File No. 73, CD video from Officer Williams's patrol car).

After being handcuffed and searched, Officer Williams attempted to place Plaintiff in a patrol car. Plaintiff, although handcuffed, began actively resisting being taken to the patrol car. Officer

---

[5]     The marijuana cigarette was recovered (Court File No. 69-3, p. 2; Court File No. 86 p. 3, Plaintiff's statement to an Emergency Medical Technician).

[6]     The Court of Appeals for the Sixth Circuit has explained that "[a] 'Taser' is an electronic device used to subdue violent or aggressive individuals. By pressing a lever, a high voltage electrical current is transmitted through a wire to the target." *Landis v. Baker*, 297 Fed. Appx. 453, 456 n. 4 (6th Cir. 2008).

Williams was walking Plaintiff toward his patrol cruiser when Plaintiff became stiff and quit walking. Another officer and Officer Williams used their body weight to push and drag Plaintiff to the patrol car. Plaintiff continued to resist the officers but they were able to push and pull him to the patrol car (Court File No. 73–in-car camera DVD).

Once they arrived at the back door of the patrol car, the officers asked Plaintiff to sit down in the back seat on the passenger side. Plaintiff refused to get into the police car and actively resisted the officers' attempts to make him sit down in the back seat. Plaintiff was standing in front of the backdoor entrance on the passenger side with his back to the car and his hands cuffed behind him as they were attempting to make him sit down. When the officers attempted to sit him in the patrol car and to bend his head down so they could put him in, he remained stiff, pushed against them, and actively resisted the officers (Court File No. 73, CD video from Officer Williams's patrol car). The officers pleaded with Plaintiff to get into the car; Plaintiff continued to resist being placed in the patrol car for approximately 30 minutes yelling that the police were going to kill him, demanding that a supervisor and ambulance be brought to the scene, and at times talking incoherently (Court File No. 73, CD from Officer Williams' and Officer Adams' in car camera).

At some point, Officers Angel and Adams were on the driver side of the police car and Officer Williams was on the passenger side. One of the two officers on the driver side pulled Plaintiff's handcuff chain towards them, pulling plaintiffs hands back in an attempt to force him to get into the car, while Officer Williams was trying to push him into the car by "kicking and kneeing" Plaintiff in the side as he pushed (Court File No. 81-1, p. 61 of Plaintiff's deposition testimony). During this time other officers came to the scene. Although Plaintiff was handcuffed, he continued to actively resist being placed in the car and the officers were unable to force him into the vehicle

8

and close the door.  Plaintiff then kneed Officer Williams in the groin and had him pinned against the door jam at which time Officer Williams struck Plaintiff's leg with his fist to get his knee out of his groin, but Plaintiff pushed harder.  Officer Williams freed himself and tased Plaintiff in the stomach at which time Plaintiff became compliant  (Court File No. 69-3).

After securing him in the vehicle, Plaintiff was driven a short distance away where an ambulance with two female paramedics met him, Officer Williams, and other officers (Court File No. 81-1).  The transcribed audio evidence reflects that when the paramedic approached him, Plaintiff requested to see anybody who was "masonic," complained his wrist was "messed up[,]" and explained that he was the reincarnation of Jack Johnson but was not on any drugs (Court File No. 86).  He told the paramedic the officers "found a marijuana stick right there or, like, five feet away from me when it was . . . other people [sic]."  (Court File No. 86, p. 3).  Plaintiff informed the paramedic it took the officers about an hour to get him in the car and then he went off on a tangent on other non-relevant topics and threatened that the paramedic would lose her job.  The paramedic talked to Plaintiff while he remained in the patrol car,  noting that he was breathing, talking, and not dying.  Plaintiff was complaining that the medics did not follow their procedure because they did not check his "blood pressure points and everything"  (Court File No. 86, p. 6-7).  The paramedics informed Plaintiff that he was being transported to Erlanger and Officer Williams drove him there with the paramedics following (Court File No. 81-2).  During the trip, Plaintiff went from telling Officer Williams that the officer "did everything . . . not to tase" him and Plaintiff knew all he had to do was sit down, to telling Officer Williams that he was going to file a hundred million dollar lawsuit (Court File No. 86, p. 8-10).

The medical records reflect two Tasers were removed from Plaintiff's abdominal wall (Court

9

File No. 81-1, p. 7). In addition, Plaintiff had an MRI, a scan, and multiple X-rays, and was given "an Ace bandage," "anti-inflammatories and a tetanus shot and some water." (Court File No. 81-1, p. 1). Plaintiff suffered from sprained wrists and a left hand contusion but no evidence of abuse was present (Court File No. 81-1, p. 6 of Plaintiff's medical record from July 1, 2009).

## III.   Analysis

Defendants bring these motions for summary judgment against Plaintiff claiming there are no material issues of fact as to the liability of any of the defendants. Defendants assert Plaintiff is not entitled to relief on his claims under 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985, or state law claim for assault (Court File Nos. 68, 70, 80). As previously explained, the Court will address the Defendants motions for summary judgment together to the extent that it will organize the Memorandum by each of the claims that Plaintiff asserts and then address the motions for summary judgment by the County and City.

### A.   *Defendants Motions for Summary Judgment*

Although Plaintiff failed to specify whether he was suing Defendants Officer Bobby Adams ("Officer Adams"), Officer Gary Williams ("Officer Williams"), and Officer Bryan Angel ("Officer Angel") in their official capacity or individual capacity (Court File No. 17), Defendants have presumed they were sued in both their official and individual capacities (Court File Nos. 68, 70), and the Court will do the same. By suing the Defendant Police Officers in their official capacities, Plaintiff is in effect suing the governmental entity that employs them–the City of Chattanooga. *Hafer v. Melo*, 502 U.S. 21, 23-25 (1991). Because Plaintiff's complaint names the City of Chattanooga as a defendant, naming these officers as defendants in their official capacities is redundant. The City of Chattanooga is the proper party to address Plaintiff's allegations against

these officers in their official capacity. Accordingly, Plaintiff's claims against these officers in their official capacity will be **DISMISSED,** and the claims against the City will be addressed in section B, *infra.*

As previously noted, although Plaintiff named the Hamilton County Ambulance Service, which is more appropriately known as the Hamilton County Emergency Medical Services, as a defendant, the proper party to address Plaintiff's allegations against this service is Hamilton County. After addressing the alleged constitutional violations, the claims against the County will be addressed in section C, *infra.*

### 1. *Plaintiff's Allegations*

In his hand-written complaint, as best as the Court can discern, Plaintiff alleges he was arrested on July 1, 2009, by Officer Gary Williams who hit him in the eye, head, and stomach; kicked, kneed, and pushed him; and tased him while he was inside the patrol car with his hands cuffed behind him (Court File No. 17). Plaintiff states he suffered internal bleeding from his rectum as a result of this force (Court File No. 17). Officer Bobby Adams also "assisted in the assault by kicking & hitting Plaintiff" and pulling his hand up until it snapped "causing a broke bone & hand." (Court File No. 17, p. 4). Officer Angel hit and stomped Plaintiff and pulled the handcuff chain causing two sprained wrists. Plaintiff states that the City and Chattanooga Police Department set policies and customs ordering the unlawful attacks on citizens in urban areas. Finally, Plaintiff claims he was denied medical care when the Hamilton County Ambulance Service failed to treat him at the scene and failed to transport him to the closest medical facility (Court File No. 17, p. 4).

### 2. *Defendants' Response*

Defendant Police Officers and the City maintain probable cause existed to arrest Plaintiff and deny Plaintiff was assaulted or that unnecessary force was used when handcuffing him and placing him in the patrol car. In addition, the City denies it has a policy of arresting citizens without probable cause or a policy permitting the use of excessive force. Further, all Defendants refute Plaintiff's claims of conspiracy, denial of medical treatment, and unequal treatment/discrimination in violation of § 1981. Defendant Officer Williams avers he attempted to place Plaintiff into custody but he pushed the officer and at that time Officer Williams took Plaintiff to the ground and attempted to cuff him. A struggle ensued and Plaintiff allowed himself to be cuffed only after another officer threatened to tase him.

Defendants contend Plaintiff refused numerous direct orders to sit in the patrol car so they attempted to physically force him into the vehicle by pushing him and pulling him into the vehicle but to no avail. Because Plaintiff refused to enter the vehicle, actively resisted going into the car, and eventually violently pinned Officer Williams to the doorjamb, Defendants contend the use of force by Taser was necessary to get Plaintiff into the vehicle to transport him. Defendants maintain they used the least amount of force to stop his resistance and place him in the vehicle. Defendants deny assaulting Plaintiff, denying him medical care, and violating any of his constitutional rights. Finally, both the City and County deny they have any policy or custom permitting any of the alleged constitutional violations.

a.      *Officer Adams' Affidavit*

Defendant Officer Adams avers, in his affidavit, that on June 30, 2009, he was on patrol and answered a call at the 1100 block of Arlington Avenue in Chattanooga, Tennessee at approximately midnight (Court File No. 69-1). When he and Officer Angel arrived at the scene, Officer Adams

observed Officer Williams wrestling on the ground with Plaintiff as he attempted to place Plaintiff into custody. Officer Angel advised Plaintiff he would use his Taser if he did not stop resisting. At that time, Plaintiff allowed himself to be handcuffed by Officer Williams.

After he was searched, Plaintiff resisted being placed in the patrol car. Other officers arrived on the scene and Officer Williams tried several times to get Plaintiff into the car. At one point Officer Adams went to the other side of the car and attempted to pull Plaintiff into the car while the other officers pushed him into the vehicle. Other officers attempted to help get Plaintiff into the patrol car and Officer Adams eventually returned to the side of the car with Officer Williams. When they tried again to get Plaintiff into the back of the car, Plaintiff lunged forward out of the backseat, pinned Officer Williams against the doorjamb and struck Officer Williams in the groin with his knee. As Officer Williams struck Plaintiff's leg with his fist to get his knee off of his testicles, Plaintiff pushed his knee harder into Officer Williams' groin. Officer Williams freed himself from Plaintiff and deployed his Taser gun, shooting the Plaintiff with it. Plaintiff immediately became compliant and got into the car, thus ending the struggle to get Plaintiff into the police car.

Plaintiff complained that he needed an ambulance and one was called. Officer Williams' supervisor decided the situation was becoming dangerous as people were pouring out of the Woodlawn Apartments in a threatening manner, thus the supervisor ordered Officer Williams to transport Plaintiff to another location to meet the ambulance. Two female EMS officers arrived. Officer Williams advised them Plaintiff had resisted arrest when being placed in the car, so for safety reasons EMS personnel had the window rolled down and viewed and questioned Plaintiff while he remained in the patrol car. Officer Williams transported Plaintiff to Erlanger. Officer

13

Adams accompanied Plaintiff into Erlanger where he was treated and released to Officer Williams who then transported him to the Hamilton County Jail for booking. Officer Adams avers he did not use excessive or unreasonable force to subdue Plaintiff and he not observe any other officer use excessive force (Court File No 69-1).

b.      *Defendant Officer Bryan Angel's Affidavit*

Defendant Officer Angel's affidavit states he answered a call around midnight on June 30, 2009, at 1100 Arlington Avenue in Chattanooga, Tennessee (Court File No. 69-2). When he arrived to assist Officer Williams, he observed Plaintiff and Officer Williams wrestling on the ground. Officer Angel approached the parties and advised Plaintiff he would use his Taser if Plaintiff did not stop resisting. At that time Plaintiff allowed himself to be handcuffed by Officer Williams. Officer Angel only recalls touching Plaintiff when he searched him after he was handcuffed. Officer Angel found a small bag of suspect marijuana in Plaintiff's pants.

After Officer Angel completed his search of Plaintiff, he observed Officer Williams try several times to get Plaintiff into his patrol car as Plaintiff was actively resisting being placed into the patrol car. Officer Adams went to the other side and attempted to pull Plaintiff into the car while other officers attempted to push him in. Several other officers tried to do the same thing but Plaintiff would not comply. Officer Adams returned to the side of the car with Officer Williams and as they pushed against Plaintiff attempting to get him into the back of the police car, Plaintiff lunged forward out of the backseat, pinned Officer Williams against the doorjamb, and violently struck Officer Williams in the groin with his knee. As Officer Williams struck the Plaintiff's leg with his fist to get his knee off of his testicles, Plaintiff pushed his knee harder into Officer Williams' groin. During the struggle a great number of people came out of the Woodlawn Apartments so Officer

14

Angel positioned himself for crowd control. After freeing himself from Plaintiff, Officer Williams deployed his Taser gun, shooting Plaintiff with it, and Plaintiff immediately became compliant and got into the car.

Officer Williams' supervisor ordered him to take Plaintiff away from the scene to meet the EMS ambulance. Due to Plaintiff's behavior during the arrest, he was not removed from Officer Williams' patrol car but rather, the two female EMS officers had the window rolled down and observed and spoke with Plaintiff to make sure he was in no distress. Plaintiff was taken to Erlanger where he was treated and released to Officer Williams. Officer Angel avers he did not use excessive or unreasonable force to subdue Plaintiff and place him in custody, nor did he observe any other officer use excessive force (Court File No. 69-2).

c.    *Defendant Officer Williams' Affidavit*

Defendant Officer Williams avers he observed Plaintiff at approximately midnight on June 30, 2009, standing in the 1100 block of Arlington Avenue in Chattanooga, Tennessee talking to several females (Court File No. 69-3). When Plaintiff saw the police car, Officer Williams observed him drop what the officer believed to be a marijuana cigarette know as a "blunt."[7] Officer Williams exited his vehicle and confronted Plaintiff, but Plaintiff tried to walk away and avoid talking to him.

Officer Williams attempted to place Plaintiff in custody but he backed away from the officer, losing his balance as he backed into a mailbox, at which time the officer took him to the ground in order to handcuff him. Plaintiff rolled over onto his stomach and while Officer Williams was on plaintiff's back Plaintiff did a push up holding himself off the ground and preventing the officer from

_____

[7]        The object was later recovered and it was marijuana.

handcuffing him. Officer Williams was unable to sweep Plaintiff's arms from under him, thus causing the officer to call for backup.

When Officers Angel and Adams arrived, Plaintiff and Officer Williams were wrestling on the ground. It was only after Officer Angel advised Plaintiff he would use his Taser if he did not stop resisting that Plaintiff stopped resisting and allowed himself to be handcuffed. After Plaintiff was searched he resisted being placed in the car. Many officers had arrived on the scene and Officer Williams tried many times to get Plaintiff into the patrol car.

At one point Officer Adams went around to the other side of the car and attempted to pull the Plaintiff into the car while the other officers attempted to push him into the vehicle. Several other officers did the same thing but to no avail. Officer Adams returned to the side of the car with Officer Williams and again attempted to get the Plaintiff into the back of the police car but Plaintiff lunged forward out of the backseat, pinned Officer Williams against the doorjamb, and proceeded to violently strike him in the groin with his knee. Officer Williams struck Plaintiff's leg with his fist to get Plaintiff's knee off of him but Plaintiff pushed his knee harder into his groin. Officer Williams finally freed himself from Plaintiff and deployed his Taser gun and fired it into Plaintiff, who immediately became compliant and got into the car. The struggle lasted approximately 45 minutes and the officers had to stop and rest at one point.

Plaintiff complained that he needed an ambulance so EMS was called. Plaintiff asked for a supervisor but Officer Williams' supervisor was already present at the scene and he ordered Officer Williams to move Plaintiff to another location to meet EMS. Due to Plaintiff's actions during the arrest, the two female EMS officers had the window rolled down and they observed and talked to Plaintiff to make sure he was not in distress. Officer Williams transported Plaintiff to

Erlanger where he was treated and subsequently released to Officer Williams who transported him to the Hamilton County Jail for booking. Officer Williams avers he did not use, nor did he observe any other officer using, excessive or unreasonable force to subdue and place Plaintiff into custody (Court File No. 69-3).

<em>d.      Patrice Schermerhorn Affidavit</em>

Ms. Patrice Schermerhorn ("Ms. Schermerhorn") has submitted an affidavit in support of Hamilton's County's motion for summary judgment (Court File No. 81-2). Ms. Schermerhorn, a paramedic employed by Hamilton County Emergency Medical, was one of the two EMS technicians dispatched to 900 Dodson Avenue at approximately 1:17 a.m. on July 1, 2009, in response to Plaintiff's request for medical attention. Officer Williams explained the situation to her i.e., that Plaintiff had been uncooperative and indicated he did not want to remove Plaintiff from his patrol car.

Thus, Ms. Schermerhorn approached the vehicle to assess Plaintiff and she noted his extreme agitation, manic speech, and yelling at various times (Court File Nos. 81-2, 86). She observed that Plaintiff had been tased and was handcuffed. Ms. Schermerhorn evaluated Plaintiff through the window of the patrol car, questioning him about what happened to him (Court File No. 86, transcript of their conversation). Plaintiff stated it took officers about an hour to get him into the car, volunteered that he was a professional fighter, and provided the identifying information she requested (Court File Nos. 81-2, 86).

Based on her assessment of Plaintiff, Ms. Schermerhorn concluded there was no immediate life-threatening problems affecting his airway, breathing, and circulation. Although Plaintiff was yelling and acting erratically, she determined he was alert and oriented to time, place, and situation.

17

She did not observe any bleeding and he did not complain of any. She ultimately concluded he was in no apparent distress and immediate treatment was not necessary on the scene. Plaintiff complained only generally about pain at various times. Plaintiff's agitation, movement, and speech gave her concern that he may have ingested drugs or medication which were causing his actions.

EMS followed the patrol car in which Plaintiff was transported to the emergency room. She informed medical control at Erlanger regarding the situation and upon their arrival, Plaintiff was taken to Room 14 at Erlanger emergency room–a secured room which contains no bed or other items with which a patient can injure himself and which is reserved for persons who are out of control but exhibit no other health problems (Court File No. 81-2).

### 3. Plaintiff's Response to Summary Judgment

As previously noted, although the scheduling order provided that Plaintiff was to file any response to a motion to dismiss and/or for summary judgment in accordance with Local Rule 7.1 EDTN, Plaintiff has not filed any opposition to Defendants' motions for summary judgment, all of which were filed in May. Notably, in his pretrial narrative, without providing any documentation or explanation, Plaintiff contends Hamilton County Criminal Court Judge Don Poole dismissed the charges in case number 273369 (Court File No. 57). Defendants do not deny the charges were dismissed. Nevertheless, the dismissal of these charges is of no consequence to Plaintiff's claims before this Court.

## I.     42 U.S.C. § 1983–Arrest Without Probable Cause

Plaintiff claims his Fourth Amendment right was violated when he was arrested on July 1, 2009, without probable cause. Defendants argue that Plaintiff's Fourth Amendment unlawful arrest claim under 42 U.S.C. § 1983 fails as a matter of law because probable cause existed to arrest

Plaintiff initially for possession of marijuana and subsequently for resisting arrest and assault on a police officer. They also argue they are entitled to qualified immunity because they did not violate any clearly established constitutional right by arresting Plaintiff.

    *  *Applicable Law*

   The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U. S. Const. amend. IV. This "right of personal security belongs as much to the citizen on the streets of our cities as to the homeowner closeted in his study to dispose of his secreted affairs." *Terry v. Ohio*, 392 U.S. 1, 9 (1968). Thus, the question in the instant case "is whether in all the circumstances of this on-the-street encounter, his right to personal security was violated by an unreasonable search and seizure." *Terry v. Ohio*, 392 U.S. 1, 9 (1968). "[W]arrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution[.]" *Virginia v. Moore*, 553 U.S. 164, 176 (2008). Furthermore, "when an officer has probable cause to believe a person committed even a minor crime in his presence, . . . [t]he arrest is constitutionally reasonable." *Virginia v. Moore*, 553 U.S. at 171.

   Reasonable suspicion to stop a person "is permissible only if law enforcement officers have a 'particularized and objective basis for suspecting the particular person stopped of criminal activity,' and 'were aware of specific and articulable facts which gave rise to reasonable suspicion.'" *United States v. Keith*, 559 F.3d 499, 503 (6th Cir. 2009) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981) and *United States*, 514 U.S. F.3d 596, 608 (6th Cir. 2008) respectively).

Probable cause for an arrest exists when the facts and circumstances within the knowledge of the arresting officer and of which he had reasonably trustworthy information are sufficient to warrant an objectively reasonable police officer in believing the person arrested had committed or was committing an offense. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003); *Beck v. Ohio,* 379 U.S. 89, 91 (1964). The Supreme Court has described the probable cause standard as "incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. at 371. The Court further explained "[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt, and that the belief of guilt must be particularized with respect to the person to be searched or seized." *Id.* (internal punctuation and citations omitted).

Thus, to demonstrate a constitutional claim of false arrest under the Fourth Amendment, Plaintiff must show there was not probable cause for the arrest. *Beck v. Ohio*, 379 U.S. 89, 90-91 (1964). "The Supreme Court has held that the test for whether an arrest is constitutionally valid is 'whether, at the moment the arrest was made, the officers had probable cause to make it–whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'" *United States v. Dotson*, 49 F.3d 227, 229 (6th Cir.) (quoting *Beck*, 379 U.S. at 91), *cert. denied*, 516 U.S. 848 (1995).

Tenn. Code Ann. § 39-17-418 (a) provides that it is an offense for a person to knowingly possess a controlled substance without a valid prescription and a violation under this section is a Class E felony where the person has two or more convictions under this section. Tenn. Code Ann. § 39-17-418(e). In addition, Tennessee courts recognize possession may be either actual or

20

constructive. *See State v. Shaw*, 37 S.W. 3d 900, 903 (Tenn. 2001).

\*        *Discussion*

In this case, Plaintiff was one of several people in a group. Officer Williams avers in his affidavit that upon sighting his patrol car he observed Plaintiff drop what appeared to be a marijuana cigarette and when he approached Plaintiff, Plaintiff attempted to walk off and avoid talking to Officer Williams. As previously stated, once a moving party presents evidence sufficient to support a motion under Rule 56, which Defendants have done, the non-moving party is not entitled to a trial merely on the basis of allegations but rather, must come forward with some significant probative evidence to support his claim. *Celotex Corp. V. Catrett*, 477 U.S. at 314.

Nevertheless, even considering Plaintiff's statement in his unverified supporting brief, it does not demonstrate his arrest lacked probable cause. Plaintiff contends he approached a group who were smoking marijuana and "after the group seen the police car they dropped the drugs." (Court File No. 19, p. 2). Plaintiff does not deny smoking marijuana at that time or claim that he did not drop a "blunt," although that appears to be the intended inference from his allegation. Nevertheless, as noted above, Tennessee courts recognize possession may be either actual or constructive. *See State v. Shaw*, 37 S.W. 3d at 903. Thus, based on Plaintiff's version of the facts, Officer Williams had reasonable suspicion to question him or anyone else in the group where the marijuana was being smoked. Plaintiff's attempt to leave and the officer's visual observation of the blunt being dropped and subsequent observation of it on the ground as he approached the Plaintiff (the group with which he was conversing had dispersed upon Officer Williams' arrival), provided the necessary reasonable suspicion to stop Plaintiff. Plaintiff's subsequent actions along with the officer's previous observation provided probable cause to arrest Plaintiff for possession of marijuana, resisting arrest,

and assault on an officer.

Because Plaintiff has not provided any credible evidence to the contrary, the Court concludes, based on the unrefuted evidence in the record, Officer Williams made an entirely reasonable inference from the facts that Plaintiff was guilty of illegally possessing a controlled substance i.e., marijuana. The facts presented in Plaintiff's brief that he was talking with a group of people who were smoking marijuana and who "dropped the drugs" when they saw Officer Williams, prove he was in the group and there were drugs. Therefore, it was reasonable for the officer, who observed the group smoking, the dropping of the marijuana, and the marijuana cigarette on the ground once he exited his vehicle, to approach Plaintiff and question him as he was the only one in the group who did not run. Under these circumstances, a reasonable officer could conclude there was probable cause to believe Plaintiff committed the crime of possession of marijuana, either solely or jointly with the others in the group. Undoubtedly the marijuana cigarette was found as Plaintiff is heard on the audio from one of the officer's patrol cars telling the EMS technician that the officers found a marijuana cigarette and in his affidavit, Officer Williams confirms that a marijuana cigarette was recovered. In addition, a nickel bag of marijuana was retrieved from Plaintiff's pants.

In sum, Plaintiff has not rebutted Officer Williams' affidavit that Plaintiff was observed dropping a marijuana cigarette, walked away when Officer Williams tried to talk to him, refused Officer Williams' command to stop walking, and resisted being handcuffed. Thus, even crediting Plaintiff's unsworn allegations in his unsworn supporting brief, Plaintiff has provided insufficient

evidence to create a genuine issue of fact.[8]

Accordingly, the Court concludes Officer Williams had reasonable suspicion to approach Plaintiff and probable cause to believe Plaintiff had committed the crime of possession of marijuana and subsequently the crimes of resisting arrest and assault of a police officer. Plaintiff's arrest, therefore, did not violate the Fourth and Fourteenth Amendment. Accordingly, Defendants will be **GRANTED** summary judgment and Plaintiff's claim that his arrest was unconstitutional will be **DISMISSED**.

### ii.     42 U.S.C. § 1983–Excessive Force

Plaintiff contends Defendant Police Officers used excessive force when arresting him. In his Pretrial Narrative Statement, without providing any facts or the circumstances surrounding his arrest, Plaintiff states he was handcuffed behind his back inside the police car when he was assaulted and Tased while inside the backseat of the patrol car (Court File No. 57). As previously noted, Plaintiff's unverified complaint and supporting brief are also factually lacking. In his complaint he alleges he was hit in the eye, head, stomped, kicked, kneed, pushed, and tased inside the patrol car while handcuffed (Court File Nos. 17, 19).

Defendants' admit they had to use force to handcuff Plaintiff and subsequently had to use force to move him into the patrol car. Defendants, however, deny using excessive force. Defendant

---

[8]     In his supporting brief, Plaintiff claims: "Plaintiff verbally told officers that he wasnt [sic] doing nothing [sic] but walking his dogs when he was approaching a group of females & males smoking marijuana [sic] after the group seen the police car they dropped the drugs and took off running up the hill. Plaintiff Smith was telling a girl not to pet his puppy and that the other dog is trained [sic] these event was captured on dashboard camera video in OIC Gary Williams 677 # patrol car." (Court File No. 19, p. 2-3). Notably, the only evidence before the Court of the actual arrest is dashboard camera video from one of the other officer's vehicles beginning with when he drove up and observed Officer Williams and Plaintiff on the ground with Officer Williams on Plaintiff's back.

Police Officers have submitted affidavits and their patrol car video recordings that captured a portion of the arrest in support of their denial that excessive force was used. Defendant Police Officers argue Plaintiff's Fourth Amendment Excessive Force claim under 42 U.S.C. § 1983 fails as a matter of law because the officers used only the amount of reasonably necessary force to handcuff him and place him in the back of the patrol car. They also argue they are entitled to qualified immunity because the right to be free from the force applied in Plaintiff's circumstance was not clearly established.

\*        *Applicable Law*

The Supreme Court has made explicit "that *all* claims that law enforcement officers have used excessive force–deadly or not–in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the *Fourth* Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1998) (emphasis in original). The Fourteenth Amendment Due Process Clause applies to state action, and a plaintiff may sue for violations under 42 U.S.C. § 1983.

When determining whether the force used to effect an arrest is reasonable, a court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. at 396 (internal punctuation and citations omitted). The test of reasonableness under the Fourth Amendment "requires careful attention to the facts and circumstances of each case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

"The 'reasonableness' of a particular use of force must be judged from the perspective of a

reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment" *id.* (citation omitted), but force is excessive when the officers actions are not objectively reasonable in light of the facts and circumstances confronting them. "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.*

    \*    *Discussion–Use of Force During Handcuffing*

In this case, Plaintiff claims the officers used excessive force when they arrested him. The parties do not dispute that the only force used against Plaintiff was during his arrest when Officer Williams was attempting to handcuff him and  place him in the back of the patrol car. Likewise, the parties do not dispute that Plaintiff resisted arrest or the type and amount of force that was used on Plaintiff.

Plaintiff, however, fails to explain the circumstances of the alleged excessive force other than to say he was hit in the eye and head, was stomped, kneed, and kicked, had his arms pulled up by the handcuff chain until they snapped and broke, and was tased in the patrol car with his hands being cuffed behind him (Court File Nos. 17, 19). Notably, Plaintiff does not deny that he offered physical resistance to the officers when they attempted to place him handcuffed in the patrol car nor does he deny their version of the events surrounding the use of force.  The credible evidence before the Court, which consists of the sworn affidavits of the Defendant Police Officers and the video and/or audio tapes that captured the majority of the events surrounding Plaintiff's arrest from the Defendant Police Officers' patrol cars, undeniably demonstrate Plaintiff physically resisted being handcuffed and placed in the police cruiser.  In addition, the proof demonstrates they used reasonable force

under the circumstances.

As previously explained, under the summary judgment standard, once Defendants' affidavits and evidence establish that they used only the amount of force necessary to handcuff and place Plaintiff in the patrol car, the burden shifts to Plaintiff to rebut their evidence with admissible verified evidence that they used excessive force. *Celotex Corp. v. Catrett*, 477 U.S. at 322. Thus, Plaintiff needs to produce evidence that the force used to effect his arrest and place him in the police cruiser was unreasonable under the circumstances. This Plaintiff has not done. In addition, none of Plaintiff's previous submissions, which are not a model of clarity, provide the necessary factual support to demonstrate a genuine issue of material fact exist as they do not include a factually specific claim that excessive force was used to arrest him.

The uncontested proof before the Court demonstrates Officer Williams' approached Plaintiff, who attempted to walk away from the officer and avoid talking to him; Plaintiff pushed Officer Williams and turned when he attempted to place Plaintiff in custody; Plaintiff backed into a mailbox and lost his balance at which time Officer Williams took him to the ground to handcuff him; Plaintiff resisted arrest by doing a push-up with Officer Williams on his back; Plaintiff only allowed himself to be handcuffed after Officer Angle advised him he would use his Taser if Plaintiff did not stop resisting; Plaintiff refused and actively resisted getting in the police car, and Plaintiff was tased only after he pinned Officer Williams to the doorjamb when he kneed the officer in his groin (Court File No. 69-3).

Although it was hard to see exactly what was happening at all times, these averments are generally supported by the DVD from Officer Angel's in-car camera and no party disputes that the video depicts what actually occurred (Court File No. 73). Officer Angel's in-car camera, shows

Officer Angel driving up to the scene and Officer Williams is laying on top of Plaintiff and a mailbox is partially knocked over. Officer Angel approaches the parties while pointing what appears to be his Taser. Although there is no audio on this DVD, the lighting is poor as it was around midnight, and the camera only captured a portion of the scene, once the Taser is pointed in Plaintiff's direction he is seen putting his hands behind him so Officer Williams can handcuff him. Before both hands are cuffed, Plaintiff appears to be attempting to turn over when one of the officer appears to, reactively and not violently, place his foot on Plaintiff's shoulder to keep him down on the ground until the cuffing is completed (Court File No. 73, DVD of Officer Angel's in-car camera). After Plaintiff was cuffed, he sat up and then stood up and was searched.

The Court did not observe anything on the DVD from which it can even infer that the force used to handcuff Plaintiff was not reasonably necessary under the circumstances. Notably, the Court observed no visible injuries on Plaintiff when he approached the camera after he was handcuffed.[9] In addition, his medical records demonstrate Plaintiff suffered only a sprain to both wrists and a contusion on his left hand, which more likely occurred when he resisted the Defendants' attempts to place him in the police car. Accordingly, to the extent Plaintiff claims excessive force was used to handcuff him, the Court concludes Defendants are entitled to summary judgment as the *de minimis* use of force used to handcuff Plaintiff cannot support a finding that the Defendant Police Officers used unreasonable force in handcuffing him.

\* *Discussion–Use of Force After Handcuffed*

Turning to Plaintiff's claim that Defendant Police Officers used excessive force after he was

---

[9] The Court did observe Officer Williams tending to his finger and it appeared that he cleaned it and put a band-aid on it.

handcuffed, the Court concludes Plaintiff has not demonstrated there is a genuine issue of fact as the officers' use of force in response to Plaintiff's resistance was reasonable. Although handcuffed, Plaintiff actively resisted being secured in Officer Williams' patrol car. In response to Plaintiff's resistance, the officers attempted to put him in the police cruiser by simultaneously pushing him and pulling his arms back with the hand-cuff chain. Eventually, after Plaintiff violently attacked an officer, a Taser was used to subdue him. The uncontested evidence before the Court demonstrates that after Plaintiff was searched, Officer Williams attempted to take him to the back of his police cruiser but Plaintiff stiffened and refused to walk, requiring Officer Williams to use his strength to push Plaintiff to the back of his vehicle. Another officer assisted and although they were able to get Plaintiff to the vehicle, they were unable to get him to sit in the vehicle.

Though dark and difficult to see at times, an in-car camera on one of the police cruisers showed the officers trying to get Plaintiff to sit in the car for approximately 20 minutes. When they tried to bend him down by placing their hands on his head he resisted bending down and continued to resist going into the vehicle even when other officers assisted. At one point, they took a break and the Plaintiff kneeled and then stood in front of the police car.[10] Plaintiff did not appear to be injured at that time. Plaintiff continuously talked to people in the neighborhood, asking them to make phone calls and have someone pick up his dogs. At times he was yelling that he would not get in the patrol car, the police were going to kill him, he wanted an ambulance, he wanted a supervisor, and at times, senseless statements. When the officers tried to get him in the vehicle again, telling him they were going to take him to the ambulance, he insisted the ambulance come

---

[10] Notably, Plaintiff appears to be larger and stronger than most of the officers attempting to get him into the car.

to his location.

According to Plaintiff's deposition, at some point he sat down in the car but still refused to get in properly so the door could be closed. Indeed, in his deposition he said he was sitting in the police car backwards with his hands toward the other side of he car when his handcuff chain and hands were being pulled back and Officer Williams was on the other side kicking and kneeing him in the side, pushing him in the car (Court File No. 81-1, p. 1). Although the alleged kicking and kneeing of Plaintiff to push him in the police care are not visible on the DVD, the officers did appear to be struggling with Plaintiff and using force to get him into the vehicle. Notably, however, even assuming the officer used such techniques, the only complaints Plaintiff made at Erlanger were that he had pain in both wrists and he was tased in the abdomen which supports a conclusion that such force was not excessive.

In addition, the force used was in accordance with the Chattanooga Police Department's use of force continuum which provides that "[a] progression of force based on the concept of increasing the police officer's level of control in response to the level of resistance offered by a suspect[,]" is permitted. As the suspect increases his level of resistance or threat to the officer or others then the officer is justified in increasing his level of control while still using the minimum amount of force necessary (Court File No. 69-6).

The officers began with giving Plaintiff verbal commands to get into the car with which he did not comply. Plaintiff actively resisted by pushing against the officers at which point the use of force continuum permits hard empty hand control which includes "kicks, punches or other striking techniques such as brachial stun or other strikes to key motor points." (Court File No. 69-6). In addition, active resistance can also justify the use of intermediate weapons, including the use of

29

canine (Court File No. 69-6). It was only after Plaintiff increased his resistance to the next level of active aggressive resistance i.e., kneeing Officer Williams in the groin, that the Taser was used to subdue him.

Although the Court was unable to see the actual tasing of Plaintiff on the DVD or the actions of Plaintiff leading up to that event, the Defendant Police Officers have provided sworn affidavits averring Plaintiff lunged and kneed Officer Williams in the groin, he deployed his Taser and tased Plaintiff in the abdomen soon thereafter, and after being tased Plaintiff became compliant and got in the vehicle. Plaintiff has not rebutted this evidence. Notably, the DVD reflects a fairly abrupt end to the struggle, comments indicating a Taser was used, and the doors being closed after Plaintiff got in the vehicle (Court File No. 73).

It is undisputed that Plaintiff refused to get into the police car so the officers were required to use their own strength to force him into the police cruiser. It is undisputed that the Defendant Police Officers attempted to place Plaintiff in the vehicle by pushing with hands, knees, and kicking, and pulling him into the vehicle by his arms and handcuff chain because he was actively resisting being placed in the patrol car. It is also undisputed that Plaintiff eventually sat down in the back seat facing out the passenger door and refusing to get in. Finally, it is undisputed that Plaintiff lunged and kneed Officer Williams in the groin and it was only after that act of violence that Officer Williams fired his Taser into Plaintiff. Under the circumstances of the situation, where Plaintiff continued to actively and physically resist being placed in the patrol car and his resistance escalated to an actual physical attack on an officer, the officers continuous use of force which ultimately including tasing Plaintiff, was reasonable. The officers used the least amount of force to effect the arrest.

30

There is simply no evidence that the manner in which Plaintiff was forced into the car was an excessive use of force under the circumstances which he created. Moreover, the only physical injuries Plaintiff suffered were two sprained wrists and a contusion to one of his wrists. Plaintiff's injuries do not support an excessive use of force claim as his Erlanger Emergency Department Record reflects he did not appear to be in acute distress; both Taser probes were removed and his abdomen was not tender; his left wrist was tender with mild edema; his right wrist was tender with no edema; the x-ray showed no fractures or dislocation in either wrist or hand; his pain level on his wrists was a 5 on a scale of 0-10; and the diagnosis was sprained wrist with contusion; he was given a tetanus shot; his wrists were wrapped with an ace bandage; and no follow-up was required. (Court File No. 81-1, pp. 6-10).

In sum, Plaintiff has failed to provide any evidence that any police officer used excessive force in effecting his arrest, which he resisted every step of the way. The evidence before the Court which includes Defendants' affidavits, Plaintiff's medical records, and DVD evidence of the actual arrest and ensuing struggle, demonstrates the degree of force used to arrest and place Plaintiff in the police car was objectively reasonable under the circumstances created by Plaintiff. There are no disputed issues of fact as to the extent of the force used by Defendant Police Officers during Plaintiff's arrest and the reasonableness of the force in light of the circumstances.

Accordingly, in the absence of proof of a genuine issue of material fact concerning whether the force was excessive, Defendants are entitled to and will be **GRANTED** summary judgment on this claim and Plaintiff's excessive force claim against Defendants will be **DISMISSED**.

### iii. 42 U.S.C. § 1983–Denial of Medical Care

Plaintiff complains that he was denied medical care prior to being transported to Erlanger

31

Hospital. Plaintiff claims he requested medical attention "due to severe pain[] " but "was denied medical attention at 1100 Arlington Avenue due to witnesses and removed to 900 Dodson Avenue where nobody was [sic] denied medical attention then." (Court File No. 19, p. 3). Plaintiff also complains that even thought he still had the Taser darts in his abdomen he was transported to Erlanger Hospital rather than Memorial or Parkridge Hospitals, both of which were closer to his location than Erlanger.

\*       *Applicable Law*

"Pre-trial detainees have a right under the Fourteenth Amendment to adequate medical treatment, a right that is analogous to the right of prisoners under the Eighth Amendment." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005). To demonstrate a § 1983 cause of action for failure to provide adequate medical treatment, a pretrial detainee must show "the defendants acted with deliberate indifference to the serious medical needs[.]" *Id.* (internal punctuation and citation omitted). There is an objective prong and a subjective prong that must be met to demonstrate a § 1983 claim for failure to provide adequate medical treatment. To meet his burden on the objective prong, the pre-trial detainee must show "the existence of a sufficiently serious medical need." *Id.* To meet the subjective prong, the pre-trial detainee must show the defendant "possessed a sufficiently culpable state of mind in denying medical care." *Id.* (internal punctuation and citations omitted).

\*       *Discussion*

Aside from the fact that Plaintiff has not submitted this claim under penalty of perjury, he has not submitted any credible proof, whatsoever, that his medical need was sufficiently serious or that he was denied medical care. The affidavits of Defendant Police Officers, along with the DVD

from at least one of their patrol vehicles, demonstrates that once Plaintiff was tased he immediately got into the patrol car and the back doors were closed. Plaintiff had been asking for an ambulance and supervisor. A supervisor was already on the scene and Hamilton County Emergency Medical Service ("EMS") was called. Officer Williams' supervisor concluded the situation was becoming dangerous because people were pouring out of the Woodlawn Apartments in a threatening manner so he ordered the officer to move Plaintiff to another location to meet EMS for safety reasons. Plaintiff was taken to meet EMS. Two female EMS officers arrived, and Officer Williams expressed his concern about removing Plaintiff from his vehicle since he had aggressively resisted arrest, so it was decided that Plaintiff would be assessed while he remained in the vehicle (Court File Nos. 69-1-69-3).

Ms. Schermerhorn, one of the paramedics that arrived on the scene, avers that she arrived at 900 Dodson Avenue at approximately 1:17 a.m. to a call for a person who had been detained by the Chattanooga Police Department, had been tased, and complained of a wrist injury. Upon arrival, Ms. Schermerhorn observed several Chattanooga Police cars at the scene. She gathered history of the situation from Plaintiff and Officer Williams, who indicated Plaintiff was violent and they had struggled with him for approximately one hour prior to getting him into the patrol car. Therefore, she checked Plaintiff to make sure he was not in distress by talking to him while he was in the patrol car with the window rolled down.

Ms. Schermerhorn approached the vehicle to assess Plaintiff and noted his "extreme agitation, his manic speech, and his yelling at various times." (Court File No. 81-2). These observations are confirmed by the DVD from Officer Williams patrol car and the transcription of the audio tape from his vehicle (Court File Nos. 73, 86). Ms. Schermerhorn evaluated Plaintiff

while he remained in the vehicle–observing that he was handcuffed and had been tased, and speaking with him to complete her initial visual and verbal assessment. In addition to providing his name, date of birth, address with zip code, social security number, and a partial medical history, Plaintiff admitted it had taken the officers approximately one hour to get him into the car and informed the EMS technician that he was a professional fighter. Based upon the information she received from the officer and Plaintiff, she was convinced he was likely to be uncontrollable if he was removed from the car, and she determined he did not have a life-threatening injury or an injury that needed immediate attention, so she did not have him removed from the car.

More specifically Ms. Schermerhorn avers she observed Plaintiff talking and yelling, so she determined his airway was open, he was breathing, and had a pulse. In addition, Plaintiff did not complain of any problem breathing, of any chest pain, or bleeding. Plaintiff complained his handcuffs were too tight and wanted them removed, but she had no authority to remove them. Although Plaintiff was oriented to place, time, and person, his agitation, movement, and speech gave her concern he may have ingested drugs or medications that cause these actions. Ms. Schemerhorn heard Plaintiff, at times, voluntarily talk in a very rapid, incoherent manner and mentioned terms like "Eastern Star," "Scottish Rite," "Skull and Bones," "King Solomon's Temple," and commented that "its God in me." As a precaution, EMS followed the transporting patrol car to the emergency room.[11]

As previously noted, Plaintiff's medical records from the treatment he received at Erlanger reflects both his wrists were sprained, one had some swelling, and one had a contusion. Plaintiff has

---

[11]     Plaintiff was placed in Room 14 at Erlanger which is a secured room containing no bed or other items with which a patient can injure himself. It is a room reserved for out-of-control patients who exhibit no other health problems (Court File No. 81-2, p. 5).

not rebutted Ms. Schermerhorn's averments or that he received anything other than these minor injuries. Consequently, Plaintiff has not demonstrated his medical need was sufficiently serious. Accordingly, he has not met the objective prong of the two-prong test necessary to demonstrate he was denied medical care.

Nevertheless, even assuming Plaintiff had a serious medical need, he has not demonstrated that any of the defendants possessed a sufficiently culpable state of mind in denying medical care. Therefore, he is unable to satisfy the subjective component of the test. Plaintiff did not present any symptoms of a serious medical need and there is nothing in the record indicating Plaintiff was subject to a substantial risk of harm or that any of the defendants thought or understood that he was subject to a serious risk of harm. These defendants did not act with deliberate indifference. Plaintiff said he needed an ambulance and they called one. They met it at a different location for safety reasons. Likewise, for safety reasons the EMS technician observed and assessed Plaintiff while he was inside the car with the window rolled down. Once she determined he was not bleeding, immediate treatment was not necessary, and he was not suffering from any life-threatening injury she had Plaintiff transported to Erlanger Hospital where he was treated.

Here, there is no evidence any of the defendants knew of and disregarded a substantial risk of serious harm to Plaintiff's health and safety. Indeed, Plaintiff would have received medical attention earlier if he would have cooperated with law enforcement. The officers instructed Plaintiff to get in the car so they could transport him to the ambulance. Considering the circumstances of this situation, the affidavits, and the DVDs there is nothing before this Court reflecting that any of these Chattanooga Police Officers or EMS technicians denied Plaintiff medical treatment. In sum, taking the facts in a light most favorable to Plaintiff, there simply is no evidence before this Court

demonstrating any Defendant disregarded a substantial risk of serious harm to Plaintiff's health.

Accordingly, Plaintiff's denial of medical treatment claim will be **DISMISSED** for failure to state a claim, and Defendants will be **GRANTED** summary judgment.

### iv.    42 U.S.C. § 1981–Equal Rights Under the Law

Plaintiff cites to 42 U.S.C. § 1981 but fails to raise a claim under this statute. In pertinent part, § 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of person and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

"[T]o establish a prima facie case of discrimination under § 1981, the plaintiff must show: (1) that the plaintiff is a member of a protected class; (2) that the defendant had the intent to discriminate on the basis of race; and (3) that the discrimination interfered with a protected activity as defined in § 1981." *Hampton v. Dillard Dept. Stores, Inc.,* 247 F.3d 1091, 1102 (10th Cir. 2001). Plaintiff has failed to allege any claim of discrimination or any of the elements to establish a prima facie claim under § 1981. Indeed, the Court was unable to discern anything in Plaintiff's filings regarding his race or any racial bias. It was only after reviewing the Defendants' submissions and viewing the DVD that the Court was able to discern Plaintiff is African-American, and it appears all of the Defendants are Caucasian. However, nowhere in the complaint does Plaintiff allege any racial discrimination and nothing the Court observed on any of the in-car camera DVDs reflect any discrimination.

Because Plaintiff has failed to allege any purposeful or intentional discrimination or any

36

necessary facts required to recover under this statute, this claim must be dismissed. Plaintiff has not pleaded any racial or other class-based, discriminatory animus. Plaintiff does not aver that Defendants have subjected him to intentional, purposeful discrimination because of race, ancestry, or ethnic characteristics. *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987); *Runyon v. McCrary*, 427 U.S. 160, 168 (1976); *General Building Contractors v. Pennsylvania*, 458 U.S. 375 (1982); *Betkerur v. Aultman Hospital Assoc.*, 78 F.3d 1079, 1095 (6th Cir. 1996); *NAACP v. City of Mansfield, Ohio*, 866 F.2d 162, 167 (6th Cir. 1989); *Leonard v. City of Frankfort Elec. And Water Plant Bd.*, 752 F.2d 189, 193 (6th Cir. 1985). Thus, not only has Plaintiff failed to make any allegations to support a claim under § 1981, he has failed to tender any competent evidence that any Defendant discriminated against him because he belonged to a protected class. Plaintiff's failure to allege a claim is fatal. Accordingly, because no claim under § 1981 has been made, Defendants are **GRANTED** summary judgment on Plaintiff's § 1981 claim and this claim against all Defendants will be **DISMISSED** for failure state a § 1981 claim.

### v.       42 U.S.C. § 1985(2) an (3)–Civil Conspiracy

Plaintiff also contends he brings his complaint under 42 U.S.C. § 1985, Civil Conspiracy, but fails to identify under which of the three sections he is proceeding in either his complaint or brief. Subsequently, however, in his pretrial narrative statement, Plaintiff states his complaint was filed under 42 U.S.C. § 1985 "Conspiracy to interfere [sic] Civil Rights (2) and (3) This Action was brought due to Excessive Use of Force and Illegal Police Procedure and Witness Intimidation." (Court File No. 57). This, however, is insufficient to raise a claim pursuant to 42 U.S.C. § 1985. Moreover, aside from the lack of raising a factually supported § 1985 claim, Plaintiff does not identify which Defendants he is suing pursuant to 42 U.S.C. § 1985.

Section 1985 protects individuals and groups from conspiracies to interfere with civil rights. 42 U.S.C. § 1985. Part one of § 1985 protects officers seeking to perform the duties of their office, while part two protects parties to lawsuits, witnesses, and jurors, and part three protects citizens from groups of person conspiring to deprive them of civil rights such as voting. Plaintiff has failed to brief this claim or put forth a claim under § 1985. Although Plaintiff refers to § 1985 (2) and (3) he alleges no facts to support a claim under either part two or part three of § 1985.

Title 42 U.S.C. § 1985(2) provides:

(2)     Obstructing justice; intimidating party, witness, or juror
If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws[.]

To sustain a cause of action under 42 U.S.C. § 1985(2), Plaintiff must prove the existence of a conspiracy among two or more persons. Plaintiff, in this case, has not presented any facts or made any specific allegation that a conspiracy existed. No specific allegation of a racial or other class-based discriminatory animus is required in order to state a claim under the first part of § 1985(2), which prohibits conspiracies to interfere with the administration of justice in Federal Courts. Such an allegation is necessary to sustain an action under the second half of § 1985(2), which prohibits conspiracies to deny or interfere with equal protection rights. *Allen v. Allied Plant Maintenance Co. of Tennessee,* 636 F.Supp. 1090, 1093 (M.D. Tenn. 1986) (citations omitted).

38

Presumably, Plaintiff seeks to recover damages under 42 U.S.C. § 1985(2) for an alleged conspiracy to arrest him, use excessive force, and intimidate some unidentified witness. The first part of § 1985(2) relates only to federal judicial proceedings. *Kush v. Rutledge*, 460 U.S. 719, 724 (1983). The alleged conspiracy in the present case concerns a state action. Therefore, the Court concludes that the first part of § 1985(2) does not apply to the alleged violation in this case.

The second part of § 1985(2) concerns obstruction of justice at the state level. The second part of the statute contains language which requires that the conspirators' actions be motivated by an intent to deprive the victims of the equal protection of the law. *Id.* at 725. An allegation of a racial or other class-based discriminatory animus is required to state a claim under the second part of § 1985(2) which prosecutes conspiracy to deny or interfere with equal protection of rights. *Allen*, 636 F.Supp. at 1093.

In *Kush* the Court of Appeals concluded and the Supreme Court affirmed, that claims of witness intimidation and obstruction of justice at the state level were not actionable under the second part of § 1985(2) because there was not a sufficient allegation of racial or class-based invidiously discriminatory animus. In the present case, there is absolutely no allegation by Plaintiff of a conspiracy to deny him equal protection of the law which is motivated by racial or other class-based invidiously discriminatory animus. Section 1985(2) does not provide Plaintiff with any basis for relief. *Willing v. Lake Orion Community Schools Bd. Of Trustees*, 924 F.Supp. 815, 819 (E.D. Mich. 1996).

As to Plaintiff's citation to § 1985(3), the Sixth Circuit has instructed–

A § 1985(3) cause of action for conspiracy requires that the plaintiff prove four elements: (1) the existence of a conspiracy; (2) the purpose of the conspiracy was to deprive any person or class of person the equal protection or equal privileges and immunities of he law; (3) an act in furtherance of the conspiracy; and (4) injury or

39

> deprivation of a federally protected right We have held that § 1985(3) applies only where the discrimination was based on race or membership in another class comprising discrete and insular minorities that receive special protection under the Equal Protection Clause because of inherent personal characteristics.

*Royal Oak Entertainment, LLC v. City of Royal Oak,* 205 Fed. Appx. 389, 399 (6th Cir. 2006) (internal punctuation and citations omitted).

Plaintiff simply has failed to allege any facts to support a conspiracy claim. Plaintiff's § 1985(3) claim fails because he has not demonstrated any of the requisite elements. The evidence in the record reveals this incident began with only one officer on the scene i.e., Officer Williams. Officer Williams called for back-up only after Plaintiff resisted arrest, and there is no evidence he knew who would come to assist him. Plaintiff's mere citation to the statute is insufficient to state a § 1985 claim. Plaintiff has failed to allege the necessary facts required to recover under this statute and there is nothing in the record from which the Court is even able to infer that the Defendants participated in a conspiracy. Because no claim under § 1985 has been made, summary judgment in favor of all Defendants on this claim will be **GRANTED** and the claim will be **DISMISSED** for failure to state a claim upon which relief may be granted.

### vi.     State-Law Assault Claim

In his supporting brief, Plaintiff claims the Defendant Officers assaulted him and they have interpreted this as a state-law assault claim. Tennessee Courts have instructed that "[b]ecause the criminal statute does not provide for a private cause of action, the Court must look to Tennessee common law to find the elements of the civil cause of action for assault." *Thompson v. Williamson County, Tenn.,* 965 F.Supp. 1026, 1037 (M.D. Tenn. 1997) (citing *Vafaie v. Owens,* 1996 WL 502133 at *3 (Tenn.Ct.App. 1996). Assault was defined at common law as "any act tending to do corporal injury to another, accompanied with such circumstances as denote at the time an intention,

40

couple with the present ability, of using actual violence against that person." *Vafaie v. Owens*, 1996 WL 502133 at *3. "In Tennessee, it is elementary that there cannot be an assault and battery without a willful injury of the person upon whom the wrong is inflicted. The word 'willful' means nothing more than intentional." *Thompson v. Williamson County, Tenn*., 965 F.Supp. at 1038 (internal citations omitted).

The facts relied upon to support Plaintiff's constitutional claims of false arrest and excessive force are the same facts Plaintiff relies upon to support his claim that Defendant Police Officers violated state laws of assault. The facts before the Court demonstrate that Defendant Police Officers did not intentionally injure Plaintiff, but rather, the sprained wrists and contusion on one hand were the result of Plaintiff resisting arrest and resisting being placed in the police cruiser. Having concluded that the actions of Defendant Police Officers that are the basis of Plaintiff's assault claims were objectively reasonable in the § 1983 context, the Court concludes Plaintiff could not prove his state law claim of assault. Likewise, since the Court has concluded Defendant Police Officers actions were reasonable, Plaintiff is unable to demonstrate any liability on the part of the City of Chattanooga.

In sum, in light of the ruling on Plaintiff's § 1983 claim of excessive force, i.e., granting summary judgment to all Defendants because the force used by Defendant Police Officers was objectively reasonable to subdue, handcuff, and place Plaintiff in the patrol car, the Court concludes the record requires summary judgment on the state-law claim of assault. Plaintiff has failed to show an assault occurred, thus he has failed to demonstrate the existence of a genuine issue remaining for trial rendering summary judgment appropriate on his state law claim of assault. Accordingly, summary judgment will be **GRANTED** on the state law assault claim and that claim will be

**DISMISSED** for failure to state a claim upon which relief may be granted.

### B.     Defendant City of Chattanooga Motion for Summary Judgment

Plaintiff has sued the Chattanooga Police Department and the City of Chattanooga as Defendants in this case. Initially, however, the Court observes that the Chattanooga Police Department is not a legal entity amenable to being sued under 42 U.S.C. § 1983. The Chattanooga Police Department is not a municipality but is merely a municipal agency or department of the City of Chattanooga rather than a separate legal entity. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (police departments are not legal entities which may be sued). Therefore, the Chattanooga Police Department is not a suable entity for § 1983 purposes and all claims brought by Plaintiff against the Chattanooga Police Department pursuant to 42 U.S.C. § 1983 will be **DISMISSED**.

In order to prevail against the City of Chattanooga, Plaintiff must demonstrate that the alleged violation of his constitutional rights resulted from acts representing official policy or custom adopted by the City of Chattanooga ("City"). *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 690-91 (1992).[12] Thus, Plaintiff must show, first, that he has suffered harm because of a constitutional violation and second, that a policy or custom of the entity–in this case, the City of Chattanooga–caused the harm. *See Collins v. Harker Heights, Texas*, 503 U.S. 115, 120 (1992). Here, aside from the fact that the Court has already ruled he has not suffered a constitutional violation, in this claim, Plaintiff has done nothing more than allege the City sets policies and

---

[12]     The City contends the affidavits of Captain Susan Blaine and Lieutenant Danna Vaugh clearly establish the City of Chattanooga does not have and did not have on July 1, 2009, any policy, custom, or practice of permitting officers to engage in the alleged unconstitutional conduct (Court File No. 71).

customs "ordering unlawful attacks on citizens in urban areas called minorities[,]" (Court File No. 17, p. 4). To state a proper claim, Plaintiff must identify the policy, connect the policy to the city itself, and show that the particular injury was incurred because of he execution of that policy; all of which Plaintiff has failed to do. *See Garner v. Memphis Police Dept.* 8 F.3d 358, 363-64 (6th Cir. 1993), cert. Denied, 510 U.S. 1177 (1994) (citation omitted).

Aside from the fact that the City's submissions refute a policy of "ordering unlawful attack on citizens in urban areas called minorities," Plaintiff's factually unsupported claim against the City alleging a policy to attack citizens in urban areas is insufficient to satisfy his burden of demonstrating the alleged violation of his rights resulted from any policy or custom on the part of the City of Chattanooga. Moreover, the Court has determined there were no constitutional violations surrounding Plaintiff's arrest and medical care. Absent an underlying constitutional violation, Plaintiff cannot hold the City of Chattanooga liable for any of his claims. *Jones v. City of Cincinnati*, 521 F.3d 555, 560 (6th Cir. 2008). Consequently, the City of Chattanooga is entitled to judgment as a matter of law. Accordingly, the City will be **GRANTED** summary judgment and all claims against the City will be **DISMISSED**.

C.     *Defendant Hamilton County Motion for Summary Judgment*

Plaintiff has sued Hamilton County alleging the County's EMS conspired with the City and its officers to deny him medical care and equal rights under the law, all in violation of 42 U.S.C. §§ 1981, 1983, and 1985. In order to prevail against Hamilton County, Plaintiff must demonstrate that the alleged violation of his constitutional rights resulted from acts representing official policy or custom adopted by Hamilton County. *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 690-91 (1992). Thus, Plaintiff must show, first, that he has suffered harm because

43

of a constitutional violation and second, that a policy or custom of the entity–in this case, Hamilton County–caused the harm. *See Collins v. Harker Heights, Texas*, 503 U.S. 115, 120 (1992). Here, aside from the fact that the Court has already ruled he has not suffered a constitutional violation, Plaintiff has failed to allege that any custom or policy of the County was the moving force behind the alleged constitutional violations he suffered. To state a proper claim, Plaintiff must identify the policy, connect the policy to the County itself, and show that the particular injury was incurred because of the execution of that policy; all of which Plaintiff has failed to do. *See Garner v. Memphis Police Dept.* 8 F.3d 358, 363-64 (6th Cir. 1993), *cert. denied*, 510 U.S. 1177 (1994) (citation omitted).

Plaintiff's complaint alleges only unconstitutional acts or omissions without any evidence that an official policy of the County existed which violated his constitutional rights. Consequently, Plaintiff has failed to satisfy his burden of demonstrating the alleged violation of his rights resulted from any policy or custom on the part of the County. Moreover, the Court has determined there were no constitutional violations surrounding Plaintiff's arrest and medical care. Absent an underlying constitutional violation, Plaintiff cannot hold Hamilton County liable for any of his claims. *Jones v. City of Cincinnati*, 521 F.3d 555, 560 (6th Cir. 2008). Consequently, the County is entitled to judgment as a matter of law. Accordingly, the County will be **GRANTED** summary judgment and all claims against the County will be **DISMISSED.**


## IV.     Conclusion

For the reasons provided above, Plaintiff has not offered sufficient evidence to permit a reasonable jury to find in his favor. The injuries of which Plaintiff complains are relatively minor,

and none of the Defendants' behavior suggests an intent to harm Plaintiff. Accordingly, the evidence Plaintiff has adduced is insufficient to raise a genuine issue of fact as to the constitutionality of his arrest, the force that was used, or the medical care provided. In addition, Plaintiff has not properly alleged a state-law assault claim or a claim under § 1981 or § 1985 against any of the defendants.

Because Plaintiff has failed to set forth any facts in support of his claims, and alternatively, failed to establish any constitutional violations, his complaint will be **DISMISSED** in its entirety for failure to state a claim on which relief may be granted under 42 U.S.C. §§ 1981, 1983, or 1985 (Court File No. 17). In addition, Defendants' motions for Summary Judgment will be **GRANTED** (Court File Nos. 68, 70, 80).

An appropriate judgment order will enter.


**/s/**_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**